

**FILED**
**Jul 06, 2018**
**01:25 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Michael Patterson | ) | Docket No. 2017-05-1265 |
| | ) | |
| v. | ) | State File No. 85818-2016 |
| | ) | |
| Huff & Puff Trucking, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Robert V. Durham, Judge | ) | |

_____

### Affirmed and Remanded – Filed July 6, 2018

_____

The employee was involved in a motor vehicle accident while operating his employer's vehicle within the course and scope of his employment. The compensability of the accident was undisputed. After undergoing significant evaluation and treatment with a physician selected from a panel, that physician released the employee and indicated in his final report he would not see the employee again. Upon receipt of the employee's request for additional medical treatment, the employer declined to provide another panel of physicians or replace the initial treating physician on the original panel. As a result, the employee sought treatment from a physician of his choice and underwent surgery to repair a labral tear in his right shoulder. Following an expedited hearing, the trial court determined the employee had come forward with sufficient evidence to demonstrate he would likely prevail at trial in establishing entitlement to additional medical and disability benefits. As a result, the trial court awarded additional temporary disability benefits and medical benefits with the employee's chosen physician. The employer has appealed. We affirm the trial court's determinations and remand the case.

Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Presiding Judge Marshall L. Davidson, III, and Judge David F. Hensley joined.

Michael W. Jones, Nashville, Tennessee, for the employer-appellant, Huff & Puff Trucking

Michael Fisher, Nashville, Tennessee, for the employee-appellee, Michael Patterson

**Factual and Procedural Background**

Michael Patterson ("Employee"), a forty-three-year-old resident of Bradyville, Tennessee, worked as a truck driver for Huff & Puff Trucking ("Employer"). On October 17, 2016, at approximately 1:00 a.m., while operating his truck on an interstate east of Knoxville, he was forced to bring his truck to a stop due to construction ahead. As his vehicle was sitting still, it was struck from behind by another truck, pushing his vehicle into a truck in front of him. Employee testified he believed there were multiple impacts as the chain reaction accident occurred, and he further believed he was rendered unconscious for some unknown period of time. Employee testified he was wearing a seat belt, and he does not know which parts of his body struck the interior of his cab, if any, or whether anything within the cab struck him.

Employee remained at the scene of the accident until Employer's safety director arrived. Employee then assisted the safety director in securing and transporting the truck and its cargo away from the scene before they proceeded back to the Murfreesboro area. The following day, Employee went to a local emergency room complaining of pain and symptoms in his neck, back, and right shoulder. Thereafter, Employee received treatment from Dr. Martin Glynn. After a course of conservative care, Dr. Glynn referred Employee for orthopedic care and a neurological evaluation. Employee chose Dr. James Rungee and Dr. Richard Rubinowicz from panels provided by Employer.[1]

Dr. Rungee, an orthopedic specialist, examined Employee, ordered diagnostic testing, and conducted physical examinations. X-rays of the right shoulder revealed no abnormalities. An MRI of the cervical spine revealed a "disk osteophyte complex" in Employee's cervical spine that resulted in "foraminal encroachment on the right side," but no "obvious impingement of the nerve root." After undergoing additional physical therapy, Dr. Rungee administered an epidural steroid injection, but Employee reported no improvement of his symptoms. Employee continued to report symptoms in his right shoulder, including that this shoulder became "stuck" and that he could no longer elevate his right arm above shoulder level. According to Dr. Rungee, an MRI of the shoulder revealed "a signal in the superior labrum likely representative of a labral tear, but no significant rotator cuff tear or any obvious mechanical block to abduction."

At Dr. Rungee's request, a functional capacity evaluation ("FCE") was performed that indicated Employee could work at a "light physical demand level with occasional lifting and carrying of 15-20 pounds," excluding shoulder-to-overhead lifting at approximately 90 degrees with his right arm. In an April 17, 2017 clinical record, after noting Employee's dissatisfaction with his medical care, Dr. Rungee stated, "[i]t was

---

[1] The evaluation and treatment of Dr. Rubinowicz, as well as a subsequent neuropsychological evaluation performed at Dr. Rubinowicz's request, are not pertinent to the issues raised in this appeal. Thus, we need not summarize or discuss those records.

clear that there was nothing I could tell him that would salvage a relationship." He also stated that "[w]e will not see him back." In an April 19, 2017 impairment report, Dr. Rungee released Employee at maximum medical improvement, commenting that he "[could not] explain based on clinical exam, mechanism of injury[,] or any imaging studies his complaints of inability to abduct his arm past 90 nor his complaint of back pain with radiation into his right leg and foot." He concluded Employee retained no permanent medical impairment "that would be assignable from the Worker's Compensation System."

Thereafter, Employee requested a panel of physicians for additional medical care but Employer declined to provide a new panel. Employee then sought treatment on his own from Dr. Jeffrey Peterson, also an orthopedic specialist. Dr. Peterson ordered a new MRI and arthrogram of the right shoulder. The MRI revealed degenerative changes in the right AC joint causing mild impingement, but no full thickness rotator cuff tears. In a June 20, 2017 report, Dr. Peterson opined that he "[does] believe the injury is associated with the accident that happened at work." He interpreted the MRI arthrogram as "showing concern for possible SLAP tear" in Employee's right shoulder.[2] He also concluded the previous MRI that Dr. Rungee ordered showed evidence of a labral tear. He then stated Employee "may likely need surgery on this shoulder."

Employee underwent surgery on December 21, 2017. In his operative note, Dr. Peterson performed a "standard SLAP repair" due to "obvious tearing of the anterior/superior labrum." According to Employee, his symptoms decreased after this surgery and his physical limitations eased. In response to a November 2, 2017 letter from Employee's counsel, Dr. Peterson agreed that Employee's right shoulder injury "arose primarily out of and in the course and scope of employment." He also agreed that the October 17, 2016 motor vehicle accident "is the primary cause [of] his complaints and [his] need for treatment." Dr. Glynn also responded to an inquiry from Employee's counsel. In his response to the March 21, 2018 letter, he agreed that Employee's right shoulder, neck, and back injuries arose primarily out of and in the course and scope of the employment.

Following an expedited hearing, the trial court determined Employee was likely to prevail in establishing entitlement to additional temporary disability and medical benefits, and it ordered that Dr. Peterson be designated Employee's authorized physician. In making this determination, the trial court found the opinions as expressed by Dr. Peterson overcame any presumption of correctness attributable to the opinions of Dr. Rungee.[3] Employer has appealed.

---

[2] "SLAP" refers to the Superior Labrum Anterior and Posterior.

[3] Although the parties disputed whether Employer had provided a proper panel of orthopedic physicians, and whether Dr. Rungee was an authorized physician pursuant to section 50-6-204(a)(3)(A)(i) (2017), the

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2017). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2017).

## Analysis

Employer identifies two issues on appeal: (1) whether Dr. Rungee was an authorized treating physician within the meaning of Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) and, if so, whether his opinion was entitled to a presumption of correctness pursuant to Tennessee Code Annotated section 50-6-102(14)(E) (2017); and (2) whether the evidence presented at the expedited hearing supports the trial court's finding that the proof submitted by Employee established a likelihood of his prevailing on the issue of medical causation at trial. We will address the second issue first.

A trial court "has the discretion to determine which testimony to accept when presented with conflicting expert opinions." *Payne v. UPS*, No. M2013-02363-SC-R3-WC, 2014 Tenn. LEXIS 1112, at *18 (Tenn. Workers' Comp. Panel Dec. 30, 2014). When such opinions conflict, a trial court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Bass v. The Home Depot U.S.A, Inc.*, No. 2016-06-1038, 2017 TN Wrk Comp. App. Bd. LEXIS 36, at *9 (Tenn. Workers' Comp. App. Bd. May 26, 2017). Moreover, we will review any such determination under an abuse of discretion standard. *Sanker v. Nacarato Trucks, Inc.*, No. 2016-06-0101, 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *12 (Tenn. Workers' Comp. App. Bd. July 6, 2016).

---

trial court determined it need not resolve those issues since it found the evidence presented by Employee overcame any presumption of correctness attributable to an authorized physician.

In the present case, both Dr. Glynn and Dr. Peterson opined that Employee's right shoulder and back conditions arose primarily out of and in the course and scope of the employment. Dr. Peterson also agreed that the October 17, 2016 motor vehicle accident "is the primary cause of his complaints and his need for treatment." Dr. Rungee admitted Employee's MRI indicated the presence of a labral tear in the right shoulder, but concluded such a condition could not explain Employee's subjective complaints or his reported inability to raise his arm above shoulder level. Once Dr. Rungee perceived that his relationship with Employee had deteriorated to the point it was not salvageable, he refused to see Employee again as a patient. After Dr. Peterson performed surgery and repaired the "obvious tearing" of the labrum, Employee's symptoms improved. Under these circumstances, we conclude the evidence presented at the expedited hearing supports the trial court's determination that Employee is likely to prevail at trial on the issue of medical causation.

Employer argues that the trial court's order was inconsistent because it found Dr. Rungee's explanation regarding the lack of a causal relationship between the labral tear and Employee's symptomatology persuasive, yet it ruled in favor of Employee on the issue of medical causation. What the trial court concluded was that Dr. Rungee's explanation that a labral tear could not cause the employee's shoulder to "lock up" was believable, but other evidence weighed more heavily in favor of the causation opinions expressed by Drs. Glynn and Peterson. The trial court noted the occurrence of the motor vehicle accident was undisputed, Employee's description of the accident was unrefuted, the accident caused "substantial damage" to the truck, and two MRI's revealed the presence of a labral tear. It further noted the physical limitations identified by the functional capacity evaluation, the results of which were deemed valid. There was no dispute that Dr. Peterson confirmed the presence of an "obvious" labral tear during the surgery, and that Employee's symptoms improved after the surgery. After weighing this evidence against the opinions expressed by Dr. Rungee, the trial court determined that Employee's expert proof outweighed the opinions of Dr. Rungee, even if Dr. Rungee's opinions were afforded a presumption of correctness. We find no abuse of discretion with respect to that determination.

Consequently, we conclude the trial court did not abuse its discretion in crediting the expert causation opinions of Drs. Glynn and Peterson over that of Dr. Rungee. Moreover, we find no error in the trial court's conclusion that any presumption of correctness attributable to Dr. Rungee's opinions would not have changed this outcome. Therefore, it is unnecessary for us to address whether the panel offered by Employer from which Employee selected Dr. Rungee was valid, whether Dr. Rungee was an "authorized treating physician" pursuant to Tennessee Code Annotated section 50-6-204(a)(3)(A)(i), and/or whether the trial court erred in not affording Dr. Rungee's causation opinion a presumption of correctness under section 50-6-102(14)(E).

5

## Conclusion

Based on the foregoing, we affirm the trial court's decision in all respects and remand this case for any further proceedings that may be necessary.



| | |
|---|---|
| Michael Patterson | ) Docket No. 2017-05-1265 |
| | ) |
| v. | ) State File No. 85818-2016 |
| | ) |
| Huff & Puff Trucking, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Robert V. Durham, Judge | ) |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 6th day of July, 2018.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Sent to: |
|---|---|---|---|---|---|---|
| Michael Fisher | | | | | X | mfisher@ddzlaw.com |
| Michael W. Jones | | | | | X | mjones@wimberlylawson.com |
| Robert V. Durham, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov